**COOK FORD SALES, INC., Appellant,**

v.

**Andrew J. BRANTZ, Appellee.**

**No. 4022.**

Supreme Court of Wyoming.

March 14, 1972.

Bruce P. Badley, Sheridan, and Bert T. Ahlstrom, Jr., Laramie, for appellant.

Robert W. Connor, Jr., Sheridan, for appellee.

. Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

McINTYRE, Chief Justice.

Cook Ford Sales, Inc. is appealing from a judgment for $166.31 plus costs, which was entered against it by the district court in Sheridan County.

In October, 1970, Andrew J. Brantz contracted with Cook Sales for the purchase of a 1966 Ford Mustang. Brantz made a cash down payment of $100 and traded in a 1960 Chevrolet. An installment contract was executed by Brantz for the balance of the purchase price.

After Brantz had driven the Mustang for a short time, it developed motor trouble. Cook Sales estimated the repairs at $400; and it was mutually agreed between the parties that Brantz would pay half of the cost of repairs and Cook Sales would stand the other half. Cook Sales agreed to rewrite the installment contract, adding to the amount due one-half of the repair bill.

The actual bill for repairs was $369.82, making Brantz' share $184.91. However, Cook Sales charged him only $150 for his share of the repairs. There is no dispute of the fact that the parties mutually agreed on the making of a new contract with half of the cost of repairs added to the amount

due. Cook Sales claims Brantz would never come to sign the new contract, although word was sent to him several times that he should do so. On the other hand, Brantz claims the contract was never brought to him for his signature.

In the meantime, Brantz kept driving the Mustang without making payments, using dealer license plates on the vehicle, which belonged to Cook Sales. Eventually Cook Sales repossessed the Mustang. The executed contract gave the right for the seller to make such repossession in the event of default in payments.

At this point Brantz initiated the instant action, praying for the return of the Mustang to him or in the alternative for the return of his down payment and costs. Cook Sales counterclaimed for the repair bill of $150; for an open account in the amount of $18.69; and for attorney fees of $150. The attorney fees were claimed under a provision in the installment contract which had been executed.

The district court, after trial to the court, allowed what the plaintiff had prayed for. It found the value of the Chevrolet trade-in to be $85. Thus, it allowed plaintiff his $100 down payment plus $85 for the Chevrolet, making $185. It deducted the open account owed by plaintiff in the amount of $18.69 and entered judgment against the defendant and in favor of the plaintiff in the amount of $166.31 plus costs of $11.50.

■ The court neglected to allow the defendant's counterclaim of $150 for the agreed-upon repairs. It also declined to allow attorney fees. We agree the claim for attorney fees was properly disallowed. However, the evidence is clear and undisputed (with several admissions) that Brantz agreed to pay half of the repair bill, and the defendant was entitled to judgment on its counterclaim for $150 for repairs to the Mustang.

We need not speculate on who or what was responsible for motor trouble in the Mustang. The agreement of the parties settled that matter, and irrespective of fault or responsibility each party was to pay half. Also, there is nothing in the record to suggest that work done on the Mustang constituted anything but "repairs," as distinguished from a capital improvement. And the repairing took place after Brantz had taken possession of and started driving the Mustang.

In order to demonstrate that the record shows the mutual agreement we speak of —that each party would pay half of the repair bill—we point out that plaintiff admitted in his complaint that he agreed to execute a new contract with half of the cost of repairs added. Also, in an answer to interrogatories, plaintiff stated:

"By oral agreement the Plaintiff agreed to pay half of the repair bill and was advised by the Defendant that a new contract would have to be written and submitted to him for his signature."

Throughout plaintiff's testimony at the trial he testified that he had agreed to pay half the repair bill. Typical of his admissions in that regard is the following excerpt from his testimony:

"Q You knew that you had to pay it?

"A I agreed with the salesman to pay half of the bill, yes.

"Q And at that time you thought the bill would be $400?

"A That is what the salesman told me."

Counsel for appellee stresses the fact that plaintiff never received a title from defendant for the vehicle he was buying. Counsel for appellant explains it was because a new contract was to be executed and plaintiff would not come in to sign the new contract. Appellee counters by saying the new contract was not brought to him.

We prefer not to become involved with the dispute about title. No damage growing out of the absence of title has been alleged or proved, and that matter appears to have nothing to do with the mutual agree-

ment that each party would pay half of the cost of repairs.

 *Concerning attorney fees,* the installment contract which plaintiff executed contained this provision:

"* * * Buyer agrees to pay reasonable attorneys' fees (15% if permitted by law) and other reasonable expenses incurred by Seller in effecting collection, repossession or resale hereunder. * *"

We need only mention that the seller initiated no action to collect installments due under its contract; and it effected repossession and resale of the Mustang without expense—at least no such expense is reflected in the record. As far as the instant case is concerned, Cook Sales has been defending against a suit brought by plaintiff. The stipulation for attorneys' fees does not cover such a situation.

It is true defendant counterclaimed for the share of the repair bill which plaintiff agreed to pay. However, the agreement to divide the cost of repairs was not a part of the installment contract which Brantz had executed. Thus, defendant's counterclaim has the same standing of any ordinary suit to recover for repairs performed. In such a suit, there is no basis for a claim of attorneys' fees.

There is no dispute about plaintiff's obligation to pay his open account of $18.69. The trial court properly deducted that amount from plaintiff's recovery. It should likewise have deducted the $150 which plaintiff agreed to pay on the Mustang repair bill.

The district court is instructed to modify its judgment by deducting therefrom the sum of $150. This means judgment will be in favor of the plaintiff and against the defendant in the sum of $16.31 and costs instead of $166.31 and costs.

Remanded with the instructions indicated.